Russell L. SIANO, Lorraine I. Siano, Peter V. Marcoline, Jr., and Susan N. Marcoline, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civil Action No. 95–1618.

United States District Court, W.D. Pennsylvania.

Sept. 12, 1996.

**480**

Peter V. Marcoline, Jr., Pittsburgh, PA, for plaintiffs.

Michael C. Colville, United States Attorney's Office, Pittsburgh, PA, R. Scott Clarke, United States Department of Justice, Tax Division, Washington, DC, for defendant.

### MEMORANDUM OPINION

BLOCH, District Judge.

Presently before this Court are cross-motions for summary judgment filed by plaintiffs and defendant pursuant to Fed.R.Civ.P. 56. For the reasons set forth in this opinion, this Court will grant defendant's motion and deny plaintiffs' motion.

### I. Factual background

This is an action for the recovery of taxes assessed against plaintiffs under the Internal Revenue Code. The uncontroverted facts are as follows.[1]

Plaintiffs are two married couples; Lorraine and Russell Siano, and Susan and Peter Marcoline. Prior to the institution of this action, plaintiffs Russell Siano and Peter Marcoline (plaintiffs) had been federal employees, Mr. Siano having been employed with the Inspection Service of the United States Postal Office and Mr. Marcoline with the United States Attorney's Office. Because they were "[f]ederal employees hired prior to January 1, 1984, [plaintiffs] were eligible to participate in the Civil Service Retirement System by contributing part of their salary to the Civil Service Retirement and Disability Fund." George v. United States, 30 Fed.Cl. 371, 373 (1994), aff'd., 90 F.3d 473 (Fed.Cir.1996). See also 5 U.S.C. § 8348.

The Civil Service Retirement Act (CSRA), 5 U.S.C. § 8331, et seq., allows for an "immediate" retirement at age 50 for a special class of federal employees involved in "law enforcement," entitling such retirees to an annuity. See 5 U.S.C. § 8336(c)(1). Plaintiffs retired on November 30, 1990, both at age 50, pursuant to the "law enforcement" exception of the CSRA.[2]

---

1. The factual background of this opinion is based largely upon the parties' Stipulation of Uncontested Material Facts, filed with this Court on March 14, 1996.

2. The CSRA defines a "law enforcement officer" as an "employee, the duties of whose position are primarily the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States, including an employee engaged in this activity who is transferred to a supervisory or administration position...." 5 U.S.C. § 8331(20).

Upon retirement, under the Federal Employees Retirement System, 5 U.S.C. § 8401, *et seq.* (FERS),[3] plaintiffs were entitled to choose one of three forms of annuities: (1) a basic annuity under 5 U.S.C. § 8339; (2) a basic annuity plus a survivor annuity under 5 U.S.C. § 8341(b)(1); or (3) an "alternative form of annuity" under 5 U.S.C. § 8343a(b). *See George,* 30 Fed.Cl. at 373. The "alternative form of annuity" has two components: first, the retiree receives a lump sum credit;[4] and, second, the retiree receives a monthly annuity, the monthly annuity thereby being reduced to reflect the payment of the lump sum credit.[5] *George,* 30 Fed.Cl. at 374; *see also* 5 U.S.C. § 8343a(b). Plaintiffs both selected the "alternative form of annuity" (alternative annuity) under 5 U.S.C. § 8343a(b).[6] Accordingly, both received the lump sum portions of their alternative annuities in two installments; the first in 1991 and the second in 1992. In addition, both began receiving reduced monthly annuities shortly after retirement.

Section 72(t) of the Internal Revenue Code imposes a ten percent additional tax on early distributions from qualified retirement plans. Pursuant to 26 U.S.C. § 72(t)(1), the Sianos paid a ten percent additional tax on the lump sum portion of Mr. Siano's alternative annuity, with respect to tax years 1991 and 1992. Likewise, the Marcolines paid a ten percent additional tax on the second installment of the lump sum portion of Mr. Marcoline's alternative annuity, with respect to tax year 1992.[7]

Thereafter, in January, 1995, the Sianos filed claims with the IRS Service Center for refunds of the ten percent additional tax paid upon the lump sum portion of Mr. Siano's alternative annuity. The District Director of the IRS subsequently disallowed the Sianos' requested refunds in October, 1995. Similarly, in April, 1993, the Marcolines filed a claim for a refund of the ten percent additional tax paid upon the second installment of the lump sum portion of Mr. Marcoline's alternative annuity.[8] Subsequently, in October, 1993, the IRS disallowed the Marcolines' claim for a refund. The disallowance was thereafter appealed to the Appeals Office of the IRS, and the appeal was denied in March, 1995.

As a result of these events, plaintiffs filed the instant action, claiming that the ten percent additional tax imposed on the lump sum portions of plaintiffs' alternative annuities was erroneously and illegally assessed and collected by the IRS. Plaintiffs have raised

3. The CSRA was amended in 1986 by the passage of the Federal Employees Retirement System Act of 1986, Pub.L. No. 99–335, 100 Stat. 514 (codified at 5 U.S.C. § 8401, *et seq.*).

4. The statute defines the lump sum credit as "the unrefunded amount [of] ... retirement deductions made from the basic pay of an employee or member ... [and] amounts deposited by an employee or member covering earlier service...." 5 U.S.C. § 8331(8).

5. The CSRA provides that the alternative annuity "shall, to the extent practicable, be designed such that the present value of the benefits provided under such alternative (including any lump sum credit) is actuarially equivalent to the present value of the annuity which would otherwise be provided the employee...." 5 U.S.C. § 8343a(c).

6. The "alternative form of annuity" program was temporarily suspended for five years pursuant to the Omnibus Budget Reconciliation Act of 1990, forcing employees to retire by November 30, 1990, if they wished to receive their contributions to the Civil Service Retirement System in the form of a lump sum distribution. *See* S.Rep. No. 16, 102nd Cong., 1st Sess. (1991); H.R.Rep.

No. 881, 101st Cong., 2nd Sess. (1990), *reprinted in* 1990 U.S.C.C.A.N. 2017. The alternative form of annuity provisions under the CSRA were subsequently amended and the lump sum credit is currently available only to employees or Members with life threatening afflictions or other critical medical conditions. *See* H.R.Rep. No. 111, 103rd Cong., 1st Sess. (1993), *reprinted in* 1993 U.S.C.C.A.N. 378.

7. Although it is not included in the Stipulation of Uncontested Facts, the Marcolines allegedly filed a joint federal income tax return for the year ending December 31, 1991, for which they paid a ten percent additional tax on the first installment of the lump sum portion of Mr. Marcoline's alternative annuity.

8. In February, 1993, the Marcolines allegedly filed with the IRS Service Center a claim for a refund of the ten percent additional tax paid upon the first installment of the lump sum portion of Mr. Marcoline's alternative annuity. Thereafter, in May, 1993, the District Director of the IRS allegedly refunded this amount, with interest. Defendant considers these events to be error on the part of the Internal Revenue Service.

claims against defendant for recovery of the amounts paid pursuant to the ten percent additional tax, plus interest and attorney's fees.

The parties have filed cross-motions for summary judgment, which are presently before this Court. In their motion for summary judgment, plaintiffs raise two arguments in support of their claims: (1) the lump sum portions of plaintiffs' alternative annuities were exempted distributions pursuant to 26 U.S.C. § 72(t)(2)(A)(iv); and (2) the imposition of the ten percent additional tax on plaintiffs' lump sum distributions is in direct conflict with the statutory scheme of the CSRA. Plaintiffs have also requested litigation costs and reasonable attorney's fees.

Defendant, on the other hand, contends that: (1) plaintiffs' lump sum distributions were "early distributions" from a qualified retirement plan and, thus, were properly subject to the ten percent additional tax under 26 U.S.C. § 72(t)(1); and (2) the imposition of the ten percent additional tax on plaintiffs' lump sum distributions is not at odds with the statutory scheme of the CSRA. Defendant further contends that plaintiffs have improperly and prematurely requested attorney's fees.

In their motions for summary judgment, the parties essentially take opposite positions on the same underlying issues. For this reason, the Court will address the parties' motions together, discussing each of the plaintiffs' claims in turn. For the reasons stated below, this Court will grant defendant's motion for summary judgment and deny plaintiffs' motion.

## II.  Summary judgment standard

Summary judgment may be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Rule 56 mandates the entry of summary judg-

ment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co.,* 898 F.2d 946, 949 (3d Cir.1990). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d Cir.) (en banc), *cert. dismissed,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that "the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Id.; Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

## III.  Discussion

### A.  Plaintiffs' claim that the lump sum distributions were exempt from the ten percent additional tax

Section 72 of the Internal Revenue Code provides the rules for determining the tax treatment of amounts received under an annuity. *See* 26 U.S.C. § 72. Section 72(t), in particular, imposes a ten percent additional tax on early distributions from qualified retirement plans.[9] Specifically, § 72(t)(1) provides as follows:

If any taxpayer receives any amount from a qualified retirement plan ... the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to ten percent of the portion of such amount which is includible in gross income.

9.  The IRS has ruled, since 1952, that the Civil Service Retirement and Disability Fund is a qual-

ified trust under § 401(a) of the Internal Revenue Code.

26 U.S.C. § 72(t)(1). As previously discussed, the lump sum portions of plaintiffs' alternative annuities were assessed a ten percent additional tax in accordance with § 72(t)(1).

Section 72(t)(2) of the Internal Revenue Code, however, sets forth six detailed exceptions to the application of the ten percent additional tax. That section provides, in part, that the ten percent additional tax shall not apply to:

> [d]istributions which are ... (iv) part of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the employee or the joint lives (or joint life expectancies) of such employee and his designated beneficiary.

26 U.S.C. § 72(t)(2)(A)(iv).

In their motion for summary judgment, plaintiffs argue that the lump sum portions of plaintiffs' alternative annuities were exempted distributions pursuant to 26 U.S.C. § 72(t)(2). More specifically, plaintiffs contend that the lump sum distributions were, in effect, "part of a series of substantially equal periodic payments ... made for the life ... of [an] employee." 26 U.S.C. § 72(t)(2)(A)(iv). Therefore, plaintiffs argue, they should not have been subject to the ten percent additional tax under 26 U.S.C. § 72(t)(1). Plaintiffs base this argument, in part, on the fact that the payments received in the lump sum distribution installments came directly from, and were a part of, plaintiffs' annuity funds.

Defendant, on the other hand, argues that the lump sum portions of plaintiffs' alternative annuities were "early distributions" from qualified retirement plans. Therefore, defendant argues, such distributions were properly subject to the ten percent additional tax under 26 U.S.C. § 72(t)(1). Defendant bases its decision, in part, on the fact that the lump sum payments do not fall within any of the listed exceptions in 26 U.S.C. § 72(t)(2). More specifically, defendant contends that the lump sum distributions are not "part of a series of substantially equal periodic payments."

The specific issue presented is one of first impression for this Court; that is, whether the ten percent additional tax provision of § 72(t) of the Internal Revenue Code applies to lump sum distributions received under an alternative annuity option of the CSRA. In deciding this issue, this Court will consider, among other things, traditional rules of statutory interpretation and the legislative history of the Internal Revenue Code.

■ Plaintiffs seek an exemption from a tax which the Commissioner of the IRS imposed upon the lump sum portions of their alternative annuities. It is a well established principle that "exemptions from taxation are not to be implied; they must be unambiguously proven." *United States v. Wells Fargo Bank,* 485 U.S. 351, 354, 108 S.Ct. 1179, 1182, 99 L.Ed.2d 368 (1988); *see also Commissioner v. Jacobson,* 336 U.S. 28, 49, 69 S.Ct. 358, 369, 93 L.Ed. 477 (1949); *U.S. Trust Co. of New York v. Helvering,* 307 U.S. 57, 60, 59 S.Ct. 692, 693–94, 83 L.Ed. 1104 (1939).

> To be sure, a statute creating an income tax exemption must be strictly construed with any doubts to be resolved in favor of the taxing entity. Furthermore, determinations of the Commissioner are presumptively correct. Plaintiff bears the burden of producing "substantial evidence" as to the wrongfulness of the Commissioner's decision.

*Shimota v. United States,* 21 Cl.Ct. 510, 518 (1990), *aff'd.,* 943 F.2d 1312 (Fed.Cir.1991), *cert. denied,* 503 U.S. 984, 112 S.Ct. 1669, 118 L.Ed.2d 389 (1992). With these guiding principles in mind, the Court will now address plaintiffs' first argument.

■ The Court acknowledges that the plaintiffs' lump sum distributions and their reduced monthly annuities originate from the same source; that is, plaintiffs' CSRS annuity funds. However, the Court agrees with defendant that the source of such distributions is not relevant to the application of the additional tax imposed under 26 U.S.C. § 72(t). Rather, as defendant argues, it is the timing and nature of the lump sum distributions that is relevant.

■ It seems apparent that early withdrawals and distributions, such as the lump sum distributions in question, generally de-

rive from the underlying retirement fund or annuity. However, the lump sum payments from the CSRS, made under the alternative annuity option, are not payments made *as an annuity*. Rather, they are payments made *under* an annuity contract. *See George,* 30 Fed.Cl. at 376; *Guilzon v. Commissioner,* 97 T.C. 237, 242, 1991 WL 146887 (1991), *aff'd.,* 985 F.2d 819 (5th Cir.1993); *Shimota,* 21 Cl.Ct. at 510. The Internal Revenue Code itself defines the lump sum portion of the alternative annuity as "an accelerated distribution of annuity payments that would *otherwise* be paid to the retiree over the expected duration of the CSRS annuity." *See* 5 U.S.C. § 8343a(c) (emphasis added); 5 C.F.R. § 831.2205. Based on this definition, and on the clear language of the relevant statute, this Court finds that the lump sum distributions were received by plaintiffs in *addition* to their actual monthly annuities, and not as *part* of them.[10]

The legislative history of the Internal Revenue Code also supports the conclusion that the lump sum distributions received by plaintiffs were not received as "part of a series of substantially equal periodic payments."

> Under present law, an exception to the ten percent additional income tax on early withdrawals from a qualified plan or deferred annuity is provided for a distribution that is part of a series of substantially equal periodic payments made (not less frequently than annually) over the life or life expectancy of the taxpayer or the lives or life expectancies of the taxpayer and the taxpayer's beneficiary. *If an employee receives a lump sum payment* (such as an early retirement incentive payment) in addition to the payment of an annual annuity over the life of the employee in substantially equal payments, only *the lump sum payment is treated as a distribution that is not part of a series of substantially equal periodic payments.*

S.Rep. No. 445, 100th Cong., 2nd Sess. (1988), *reprinted in* 1988 U.S.C.C.A.N. 4515 (emphasis added).

Defendant cites to *Shimota v. United States* in support of its position that the lump sum distributions received by plaintiffs were properly subject to the ten percent additional tax. Faced with a similar issue, the Court in *Shimota* provided the following analysis:

> Section 72(t)(2) provides six detailed exceptions to application of the additional tax. None of these exceptions applies to the case *sub judice.* The Court is persuaded that under the doctrine of expressio unius est exclusio alterius, the absence of any additional exception from § 72(t)(2) is persuasive evidence that *Congress did not intend to permit early lump sum distributions from the Fund to escape the additional tax.* Congress could easily have included with these six exceptions in § 72(t)(2) another exception to application of the additional tax, had it meant for early lump sum distributions from the Fund to escape the additional ten percent tax. The fact that the computation of the alternative form of annuity is executed as if the lump sum distribution was an early distribution of annuity payments which would otherwise be due supports the conclusion that the payment at issue is such an "early" distribution. (Citations omitted).

*Shimota,* 21 Cl.Ct. at 526 (emphasis added). The Federal Circuit subsequently affirmed the opinion of the Claims Court in *Shimota,* specifically stating that "the arguments presented by *Shimota* in this appeal were fully considered and the issues correctly decided in the [Claims Court's] thorough and well reasoned opinion." *Shimota,* 943 F.2d at 1312.

Although it does not represent binding precedent, this Court finds the *Shimota* analysis persuasive and, therefore, adopts it as its own. For this and the above reasons, this Court rejects plaintiffs' claim that the lump sum portions of their alternative annuities are exempted distributions. Rather, this Court concludes that the lump sum portions were early distributions from a qualified re-

---

**10.** It is without question that the reduced monthly annuities received by plaintiffs as part of their alternative annuities are exempt from the ten percent additional tax under 26 U.S.C. § 72(t)(1), because such distributions clearly fall within one of the six listed exceptions in 26 U.S.C. § 72(t)(2). Specifically, such distributions are "part of a series of substantially equal periodic payments ... made for the life ... of [an] employee." 26 U.S.C. § 72(t)(2)(A)(iv).

tirement plan, not falling within any of the six specific exceptions of § 72(t)(2). More specifically, this Court concludes that plaintiffs did not receive the lump sum distributions of their alternative annuities as "part of a series of substantially equal periodic payments ... made for the life ... of [an] employee." 26 U.S.C. § 72(t)(2)(A)(iv). For these reasons, such distributions were properly subject to the ten percent additional tax pursuant to 26 U.S.C. § 72(t)(1).

Plaintiffs have failed to unambiguously prove that the lump sum distributions were exempt from taxation under 26 U.S.C. § 72(t)(1), and this Court is not at liberty to create exceptions to the Internal Revenue Code. Accordingly, defendant's motion for summary judgment will be granted, and plaintiffs' motion will be denied.

### B. Plaintiffs' claim that application of § 72(t) to the lump sum distributions conflicts with the statutory scheme of the CSRA

■ Plaintiffs' second argument in their motion for summary judgment is that the imposition of a ten percent additional tax on the lump sum portions of plaintiffs' alternative annuities is in direct conflict with the statutory scheme of the CSRA. Defendant, on the other hand, argues that the absence of an exception for a lump sum distribution in 26 U.S.C. § 72(t)(2) does not give rise to a conflict between the Internal Revenue Code and the statutory scheme of the CSRA. For this reason, defendant contends that the lump sum distributions received by plaintiffs as part of their alternative annuities were properly subject to the ten percent additional tax under 26 U.S.C. § 72(t)(1). To decide whether a conflict exists between the two statutes, this Court will follow traditional rules of statutory construction.

"The purpose of statutory construction is to harmonize the law and save apparently conflicting statutes from ineffectiveness." *Musselman Hub–Brake Co. v. Commissioner of Internal Revenue*, 139 F.2d 65 (6th Cir. 1943) (*citing Burnet v. Guggenheim*, 288 U.S. 280, 286, 53 S.Ct. 369, 371, 77 L.Ed. 748 (1933)). The Supreme Court has set forth the following guidelines for statutory construction:

> The plain meaning of legislation should be conclusive, except in rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of the draftors.

*United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (citation omitted). On this same subject, the Supreme Court has voiced the following:

> [t]he relevant question is not whether, as an abstract matter, the rule advocated by [plaintiffs] accords with good policy.... Courts are not authorized to rewrite a statute because they might deem its affects susceptible of improvement.

*Badaracco v. Commissioner*, 464 U.S. 386, 398, 104 S.Ct. 756, 764, 78 L.Ed.2d 549 (1984).

■ "Taxing statutes [in particular] must be applied within reasonable limits and construed in light of their purpose." *Musselman*, 139 F.2d at 67. The legislative history of the Internal Revenue Code "indicates that § 72(t) was created to recoup the tax benefits that have been provided by the deferral of income taxes and to deter the diversion of tax favored retirement savings to nonretirement uses." *See Boulden v. Commissioner of Internal Revenue*, T.C.Memo. 1995–347, 1995 WL 447971 (U.S. Tax Ct. July 31, 1995), *aff'd.*, 77 F.3d 467 (4th Cir.1996). With these guiding principles in mind, the Court will now consider the plaintiffs' second argument.

As plaintiffs assert, the CSRA allows federal law enforcement employees, such as plaintiffs, to retire at age 50 without penalty or reduction in benefits. Plaintiffs argue that the ten percent additional tax imposed on the lump sum portions of plaintiffs' alternative annuities is a "penalty" that effectively "reduces" the amount of their retirement benefits. For this reason, plaintiffs argue that 26 U.S.C. § 72(t)(1) is in conflict with the statutory scheme of the CSRA.

Defendant, on the other hand, contends that the provisions of the CSRA providing for early retirement without loss or reduction of benefits simply mean that law enforcement

officers, like plaintiffs, may retire at age 50 without having the amount of their annuities determined under the CSRA reduced because of their comparatively young retirement age. The Court finds defendant's argument persuasive.

As plaintiffs assert, law enforcement employees are unique in that they are permitted to retire at an earlier age than other federal employees, without having their retirement benefits reduced. However, plaintiffs' status as retired law enforcement employees does not provide them with an exemption from the tax implications of 26 U.S.C. § 72(t). By electing the alternative annuity, plaintiffs still received *full* retirement benefits, as contemplated by the CSRA. More specifically, both effectively received amounts "actuarially equivalent to the present value of the annuity which would otherwise be provided the employee," as provided by the CSRA. 5 U.S.C. § 8343a.

Moreover, plaintiffs were never required to elect the alternative form of annuity as they did. Rather, upon retirement, plaintiffs could have selected other annuity packages, which would have been completely exempt from the ten percent additional tax imposed under 26 U.S.C. § 72(t)(1).[11] Instead, plaintiffs chose the alternative annuity option, whereby they received a lump sum distribution in addition to their monthly annuity. By electing the alternative annuity option, plaintiffs chose to receive part of their unreduced benefits in the form of an *early distribution,* thereby subjecting that portion of their alternative annuity to the ten percent additional tax imposed under 26 U.S.C. § 72(t)(1).

This Court concludes that the relevant provisions of the CSRA and the Internal Revenue Code can be interpreted and applied consistently. In particular, this Court finds that the imposition of the ten percent additional tax on the lump sum distributions received by plaintiffs in connection with their alternative annuities is consistent with the statutory scheme of the CSRA. Therefore, plaintiffs' lump sum distributions were properly subject to the ten percent additional tax

pursuant to 26 U.S.C. § 72(t)(1). For these reasons, this Court will grant defendant's motion for summary judgment and deny plaintiffs' motion.

## C. *Plaintiffs' request for attorney's fees*

■ In their motion for summary judgment, plaintiffs request litigation costs and reasonable attorney's fees from defendant pursuant to 26 U.S.C. § 7430(a)(2) and the Equal Access to Justice Act, 28 U.S.C. § 2412. Section 7430 of the Internal Revenue Code governs the award of litigation costs and attorney's fees in tax cases. Specifically, that section provides as follows:

> In any ... court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, *the prevailing party* may be awarded a judgment or a settlement for ... (2) reasonable litigation costs incurred in connection with such court proceeding.

26 U.S.C. § 7430(a)(2) (emphasis added). The Code provides the following definition for "prevailing party":

> Any party in any proceeding to which subsection (a) applies (other than the United States or any creditor of the taxpayer involved)—(i) which establishes that the position of the United States in the proceeding was not substantially justified, (ii) which—(1) has substantially prevailed with respect to the amount in controversy, or (2) has substantially prevailed with respect to the most significant issue or set of issues presented....

26 U.S.C. § 7430(c)(4). Thus, before they can be awarded costs and attorney's fees under § 7430 of the Internal Revenue Code, the plaintiffs: (1) must be prevailing parties; and (2) must demonstrate that the position of the defendant in this matter was not justified. This Court finds that plaintiffs have not met either of these requirements.

First, for the reasons set forth above, the plaintiffs are clearly not prevailing parties in

---

**11.** As previously noted, the monthly annuity portions of plaintiffs' alternative annuities are not subject to the ten percent additional tax because

they are "part of a series of substantially equal periodic payments" made for the life of the employee.

this matter. Second, because the defendant's position was adequately supported by the plain language of the Internal Revenue Code, as well as relevant case law and legislative history, this Court concludes that the defendant's position was substantially justified; that is, "justified to a degree that would satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988); *Lennox v. Commissioner*, 998 F.2d 244, 248 (5th Cir. 1993). This Court not only finds that the defendant's position was substantially justified, but it also finds that it was clearly correct. For these reasons, this Court will deny plaintiffs' request for litigation costs and reasonable attorney's fees.[12]

*IV. Conclusion*

This Court's resolution of plaintiffs' claims effectively resolves both the plaintiffs' and defendant's motions for summary judgment, and for the reasons set forth above, this Court will grant defendant's motion for summary judgment and deny plaintiffs' motion.

12. Plaintiffs argue that the pre-litigation administrative actions of the defendant should be considered by the Court for a determination of the reasonableness of the defendant's present position. After having fully reviewed such pre-litigation events, this Court's conclusion remains the same; that is, at all times relevant to the within action, defendant's position was substantially justified.